Ray W. LAMBERT, Sr.,
Plaintiff-Appellant,

v.

DIAMOND M DRILLING COMPANY, Diamond M Company, Marathon Oil Company and Marathon Petroleum Company, Defendants-Appellees.

No. 81–3373
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Aug. 26, 1982.

Rehearing Denied Oct. 15, 1982.
See 688 F.2d 1023.

Lawrence N. Curtis, Lafayette, La., for plaintiff-appellant.

Weigand & Siegrist, Joseph J. Weigand, Jr., Houma, La., for Diamond M Drilling.

Before BROWN, POLITZ and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Ray W. Lambert, Sr., was seriously injured when he slipped on drilling mud on the deck of a semi-submersible drilling rig operated by his employer, the Diamond M Drilling Companies. He sues the Diamond M Companies under the Jones Act, 46 U.S.C. § 688, claiming negligence in the maintenance and condition of the drilling rig which resulted in his injury. He also claimed unseaworthiness. The parties stipulated that the drilling rig "Diamond M Century 100" was a vessel and that Ray Lambert was a seaman as contemplated by the Jones Act.

Lambert's proof before the jury consisted of evidence showing that he was the tool pusher working the night tour, and he was in charge of the drilling operation on his tour. He had talked with the driller to make sure that the pipe stands being removed from the well at the time in question would not be "jumped" because it was necessary to remove the drill pipe "wet," *i.e.* with the drilling mud still inside the pipe.

While this work proceeded, he then went below to do some other work. While out of the sight of the drilling, he heard noises which indicated that the driller might be "jumping" the pipe, and thus causing excess mud to be spread around the drill floor. He returned to the drill floor and found mud on the floor and on the lights causing the work area to be darkened. While walking across the floor to tell the driller to "shut down the rig and wash down the floor and the lights," he slipped and was injured.

Other members of the crew who were actually pulling the pipe testified as witnesses called by Lambert. They testified that they were carrying out the work in

normal fashion and that the driller was not jumping the pipe. However, in the removal of a wet string it is impossible to avoid some drilling mud being spread on the floor. The testimony was that one of the roughnecks was hosing off the floor of the mud after each stand of pipe had been removed.

At the conclusion of the plaintiff's case, and considering the evidence summarized above, the district court granted a directed verdict for the defendant companies. We find this directed verdict in error in two respects and reverse for a new trial.

First, the lower court used the incorrect standard for determining whether a directed verdict should be issued against the claimant seaman in a Jones Act case. The lower court orally applied the following standard: "[V]iewing the evidence in the light most favorable to the plaintiff and giving the plaintiff the benefit of all inferences, and least favorable to the mover, the Diamond M Companies, viewing the evidence in that light I find that there are no disputed issues of fact which would—from which a finder of fact could conclude anything other than the fact that the situation confronting Mr. Lambert, from which his injury has arisen, was any more than a normal risk of his occupation as a seaman."

■ This statement of the standard by the district court is a reasonable paraphrase of the usual standard for deciding whether a directed verdict should be granted. It is applicable in this case to a verdict on the unseaworthiness claim. *Allen v. Seacoast Products, Inc.*, 623 F.2d 355, 359 (5th Cir. 1980). However, as we made clear in *Robinson v. Zapata Corp.*, 664 F.2d 45, 47 (1981), "the standard to be applied to a Jones Act claim is more stringent. The court may direct a verdict or grant judgment n. o. v. on a Jones Act claim only when there is *complete absence* of probative facts supporting the non-movant's position." (Emphasis added). *See Boeing Co. v. Shipman*, 411 F.2d 365, 370 (5th Cir. 1969) (en banc) (distinguishing between the "complete absence of probative facts" test applicable to FELA and Jones Act claims, and the "reasonable minds" test applicable to other fed-

eral claims). The statement of the test applied by the district court was clearly based upon the "reasonable minds" approach by the indication that "viewing the evidence" a finder of fact could not conclude anything other than that the situation confronting Mr. Lambert was the normal situation. The wrong standard was applied to the Jones Act claim.

■ Second, the record shows that there was at least some evidence that the defendant companies were guilty of negligence in the operation of the drilling rig by allowing mud to be on the floor and on the lights. Obviously the lights were of great importance to the operation on the night shift. The conclusion of the district court was that there was no evidence that the situation concerning the mud was any more than the normal condition of mud which had to be expected when the drill pipe was being pulled wet. In contrast to this conclusion, Lambert testified that having seen the condition of the floor and the lights covered by drilling mud he was on his way to tell the driller to shut down the operation until the mud could be washed off. This alone is evidence that at the time of his injury the mud on the floor and on the lights was in excess of what was to be expected if the operation was being carried out without negligence. The fact that one of the roughnecks testified he washed off the mud after every "wet string" was pulled does not alone establish that he had done the job adequately or that other measures were not needed to carry out the operation without negligence. The testimony of Lambert alone, if believed, would establish that the conditions were not normal and that an excess of mud was on the drilling floor and on the lights. This is enough to require the case to go to the jury. There is no "complete absence" of probative facts supporting his position.

■ Lambert was in charge of the drilling operation on the particular tour. But the possibility of finding that he also was negligent, although an issue in the case, would not defeat his claim as a matter of law. *Spinks v. Chevron Oil Co.*, 507 F.2d 216, 221 (5th Cir. 1975).

Finding error in the granting of a directed verdict for defendant at the close of plaintiff's case, there must be a new trial.

REVERSED.