Ronald JUSSILA, Plaintiff-Appellant,

v.

M/T LOUISIANA BRIMSTONE, et al., Defendants,

Pelican Marine Carriers, Inc., Defendant-Appellee.

No. 82–3102
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Nov. 8, 1982.

Darleen M. Jacobs, New Orleans, La., for plaintiff-appellant.

Terriberry, Carroll, Yancey & Farrell, Robert J. Barbier, New Orleans, La., for defendant-appellee.

Before GEE, RANDALL and TATE, Circuit Judges.

TATE, Circuit Judge:

The plaintiff Jussila is a seaman who injured his shoulder in a fall sustained on the M/T Louisiana Brimstone, the merchant vessel on which he was employed by the defendant. At night he tripped over a metal rim arising vertically from the deck, called a fishplate, which was not readily visible because it was painted a dark color. Jussila brought suit before a jury in district court, alleging a violation of the Jones Act, 46 U.S.C. § 688, and an admiralty claim for unseaworthiness, because the defendant had not painted the fishplate a luminous color.

The jury found for the defendant on both claims. Jussila now appeals the district court's denial of directed verdict in his favor at the close of evidence, asserting that he proved negligence and unseaworthiness as a matter of law. We find that the district court correctly denied the plaintiff's motion for directed verdict, and we therefore affirm the judgment dismissing the suit on the basis of the jury findings.

*The Facts*

Shortly before midnight on February 2, 1978, a dark and overcast night, Jussila left his bow lookout watch to return to the main deck of the ship. Because Coast Guard regulations allowed only navigational lights to be visible on deck, he carried a flashlight in his left hand to guide his way. As he approached the port ladder to descend from the forecastle to the main deck, the raincoat slipped down his arm and blocked the flashlight's beam.

Still walking forward, his foot caught on the fishplate, designed to prevent water from cascading over the ladder and the deck below. It formed a four-inch-high metal rim protruding from the edge of the forecastle deck before the top step of the ladder. The fishplate was painted the same rusty maroon color as the forecastle deck, while its thin upper rim-strip and the top step of the ladder were painted white. Although Jussila clutched at the rail, he fell to the deck below, landing on his face and shoulder and severely injuring his shoulder.

Evidence at trial focused on whether Jussila's employer breached its duty to provide a safe place for Jussila's work and acted contrary to industry custom by not painting the fishplate in a manner to render it more visible at night. The plaintiff's witness, qualified as an expert only in "appurtenances seamen can expect to encounter aboard a vessel," testified that the normal procedure would have been to paint the protruding rim with luminous paint that would reflect light. The defendant's qualified expert in marine safety and surveying testified that no unsafe condition existed.

Assigning no reasons, the trial court denied both sides' motions for a directed verdict.

*The Jones Act Claim*

Jussila argues that he presented sufficient evidence to establish as a matter of law the "slight degree" of negligence and causation necessary to recover under the Jones Act. He concludes that "no reasonable jury" would find that the defendant

employer was not negligent and that he was therefore entitled to a directed verdict.

■ With respect to Jones Act claims, this Circuit has applied the stringent test used in Federal Employers' Liability Act (FELA) cases, holding that "the court may direct a verdict ... only when there is a *complete absence* of probative facts supporting the non-movant's position." *Lambert v. Diamond M Drilling Co.,* 683 F.2d 935, 936–37 (5th Cir. 1982), *quoting Robinson v. Zapata Corp.,* 664 F.2d 45, 47 (5th Cir. 1981). This standard makes determination of factual issues more likely to be a jury question than under the "reasonable minds" test, usually-applicable in non-Jones Act civil cases. The latter test permits the trial court to direct a verdict "[i]f the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict." *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir. 1969) (en banc).

The strict standard has so far been applied when the defendant, the seaman's *employer,* has moved for a directed verdict. In *Allen v. Seacoast Products, Inc.,* 623 F.2d 355 (5th Cir. 1980), this court questioned its suitability to a motion brought by a plaintiff *seaman* because "[a] directed verdict in a seaman's favor ... furthers the [Jones] Act's purposes, ... is consistent with the seaman's 'featherweight' burden of proof, and ... provides as much remedy to the seaman as could the most sympathetic jury." 623 F.2d at 360.

The court in *Allen* observed that the "reasonable man" standard might provide the more appropriate test of the sufficiency of the evidence on a seaman's motion for a directed verdict. *Id.* However, the court also noted that this standard may be almost as strict as the FELA test because of a rule that the party with the burden of persuasion is entitled to a directed verdict only upon a showing of "overwhelming" evidence. *Id.* at n. 9. The court did not resolve the question of the appropriate standard at that time because, under the evidence in *Allen,* the directed verdict in

favor of the plaintiff as to negligence was sufficient to meet the stricter FELA standard.

■ For similar reasons, we need not here reach the question of which standard applies to the seaman's motion for directed verdict on a Jones Act claim. A review of the record shows that Jussila cannot satisfy even the "reasonable man" standard of *Boeing,* that will more readily permit a directed verdict from the FELA standard. The defendant's expert on marine safety testified that the condition was safe and that there were no Coast Guard regulations requiring a different color. A ship's officer testified for the defendant that painting the rim white (as contended for by the plaintiff) would create a greater hazard of fall because of possible confusion between it and the white-painted step below it. It is clear that the defendant presented "substantial ... evidence of such quality and weight that reasonable and fair-minded men ... might reach different conclusions," as to negligence, *Boeing,* 411 F.2d at 374. There was certainly no complete absence of probative facts supporting the defendant's position.

*The Unseaworthiness Claim*

Jussila contends that not painting the fishplate with white or luminous paint was contrary to industry custom and was therefore unseaworthy for the dark color of the fishplate was unfit for its intended purpose of safe ingress and egress from the forecastle deck.

■ The appropriate standard for review over this claim is the "reasonable man" test of *Boeing. See Allen v. Seacoast Products, Inc., supra,* 623 F.2d at 359. Under this standard, a reasonable juror might balance the plaintiff's witness' testimony as to the industry custom of fishplate painting against the court's limited qualification of the witness and his admitted "negligible" contact with merchant vessels.

■ In addition, the defendant's expert in marine safety testified that he knew of no Coast Guard regulations that would re-

quire the fishplate to be painted a different color and that no unsafe condition existed. After hearing this evidence, reasonable minds could reach different conclusions as to the seaworthiness of the Louisiana Brimstone. The district court was thus justified in denying the plaintiff a directed verdict and sending the issue to the jury for its determination.

*Conclusion*

Because there was sufficient evidence presented at trial to enable reasonable minds to differ as to the defendant's negligence and the vessel's seaworthiness, we find no error in the district court's denial of a directed verdict, and we AFFIRM the judgment dismissing the plaintiff's suit.

AFFIRMED.