IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 31, 2008

Charles R. Fulbruge III
Clerk

No. 08-50288
Summary Calendar

DIANNE D. MORGAN,
Both Individually and as Administrator of
Estate of Donald Edward Starnes, Jr.,

Plaintiff-Appellant,

v.

CHASE HOME FINANCE, LLC,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Texas
No. 1:07-CV-851

Before SMITH, STEWART, and SOUTHWICK, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Dianne Morgan sued Chase Home Financing ("Chase") for wrongful fore-closure on a house owned by her late common-law husband, Donald Starnes. The district court denied a motion to remand and granted summary judgment in favor of Chase. We affirm.

I.

Donald Starnes purchased a house in Pflugerville, Texas, with a mortgage secured by a promissory note and deed of trust that were subsequently trans-ferred to Chase. Starnes later entered into a common-law marriage with Dianne Morgan.

Several years later, Starnes moved to Kerrville, Texas, and checked into a rehabilitation facility to obtain treatment for an alcohol problem; Morgan re-mained behind in the Pflugerville house. Starnes told Chase that he wanted his contact address changed to a post office box in Kerrville, because he no longer lived in Pflugerville, and that he would eventually need to evict his "girlfriend and friend" who were living in the Pflugerville house. Following those instruc-tions, Chase updated Starnes's account information with the new mailing ad-dress.

Shortly thereafter, Starnes died. His parents contacted Chase and for-warded a copy of the official death certificate and an affidavit of heirship. The certificate indicated that Starnes had died single; the affidavit of heirship repre-sented that he "was never married" and that his parents "constitute the sole heirs at law." Pursuant to instructions from the parents, Chase changed the ac-count's contact information to their mailing address in Coleman, Texas.

Although Morgan continued to make regular mortgage payments on the Pflugerville house, Chase determined that the account was in default. As re-quired by Texas law, it mailed a notice of the default and provided an opportu-nity to cure. Because it was unaware that Morgan had any claim to the resi-

dence, the notice was sent to Starnes's parents in Coleman.

The account remained in default, and Chase referred it to foreclosure. As part of that process, it began rejecting payments that were not sufficient to bring the account current. When Morgan attempted to make her regular monthly payment at a Chase branch office, it was rejected, and she was informed of the foreclosure. The vice-president of the branch office faxed Chase's mortgage research department to say that "the client (Dianne Morgan, common law spouse)" had "received a foreclosure letter and is therefore quite concerned." Because Morgan was neither named on the promissory note nor listed anywhere on the account, Chase instructed its employees not to provide her with information about the loan. It called her to request that she furnish documentation of her claim to the property;[1] none was ever provided.

Two months later, as permitted by the mortgage note, Chase accelerated the debt and set a date for a foreclosure sale. In compliance with Texas law, it mailed notification of the acceleration and sale date to the Pflugerville house (because it was the subject of the foreclosure sale) and Starnes's parents in Coleman (because that was the address on the account). Within a month, Chase sold the house at foreclosure.

Several months after the foreclosure sale, Morgan filed a probate proceeding to have herself named as administrator of Starnes's estate. The probate court determined that Morgan was indeed Starnes's common-law wife and, accordingly, named her administrator.

---

[1] Morgan says she "is not aware of where this request by [Chase] appears in the record, and . . . denies that this request was ever made of her . . . ." But the evidence for the request comes from her own submissions; in her memorandum to the district court and her brief on appeal, she quotes Chase telephone logs that include the following notation for September 15, 2005: "I called and left Ms. Morgan a message and request she provide some sort of documentation showing she is entitled to the property."

II.

Morgan sued in the state probate court that was handling Starnes's estate; the defendants were Chase and Wendy Alexander, the trustee who conducted the foreclosure sale. Alexander moved to dismiss based on TEX. PROP. CODE § 51.007(a),[2] stating that she was not a "necessary party." Morgan did not respond or otherwise object to the motion, so the court properly dismissed Alexander without prejudice under TEX. PROP. CODE § 51.007(c).[3] Chase then filed a notice of removal based on diversity jurisdiction.

Morgan moved to remand, arguing that the federal district court either lacked jurisdiction or should decline to exercise it to avoid interfering with the probate proceedings. The district court denied the motion on both counts, then granted summary judgment for Chase. Morgan appeals that ruling.

III.

"In reviewing a district court's denial of a plaintiff's motion to remand a case from federal court to state court, the Court of Appeals applies a de novo standard of review." Sherrod v. Am. Airlines, Inc., 132 F.3d 1112, 1117 (5th Cir. 1998). Generally, "a case nonremovable on the initial pleadings [can] become removable only pursuant to a voluntary act of the plaintiff"; this is the "voluntary-involuntary" rule. Weems v. Louis Dreyfus Corp., 380 F.2d 545, 547 (1967). We have long recognized an exception to this rule, however, "where a claim against a nondiverse or in-state defendant is dismissed on account of fraudulent joinder.

---

[2] "The trustee named in a suit or proceeding may plead in the answer that the trustee is not a necessary party by a verified denial stating the basis for the trustee's reasonable belief that the trustee was named as a party solely in the capacity as a trustee under a deed of trust, contract lien, or security instrument." TEX. PROP. CODE § 51.007(a).

[3] "If a party has no objection or fails to file a timely verified response to the trustee's verified denial, the trustee shall be dismissed from the suit or proceeding without prejudice." TEX. PROP. CODE § 51.007(c).

Fraudulent joinder can be established by demonstrating either '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" Crockett v. R.J. Reynolds Tobacco Co., 436 F.3d 529, 532 (5th Cir. 2006) (quoting Travis v. Irby, 326 F.3d 644, 646-47 (5th Cir. 2003)).

Morgan's suit did not become removable until the probate court dismissed Alexander.[4] Because her dismissal was not a voluntary act by the plaintiff, Morgan believes that the voluntary-involuntary rule should have barred removal. The district court, on the other hand, found that Alexander had been fraudulently joined, because Morgan could not establish a cause of action against her. We agree.

Morgan's complaint alleged a single cause of action against Alexander: breach of fiduciary duty. As the district court correctly noted, under Texas law "the trustee . . . does not owe a fiduciary duty to the mortgagor." Stephenson v. LeBoeuf, 16 S.W.3d 829, 838 (Tex. App.SSHouston [14th Dist.] 2000, pet. denied). The only cause of action alleged against Alexander was therefore invalid.

Morgan responds that "if later discovery showed that [Alexander] was a necessary party to the suit[,] she could be brought back into the suit." But we have rejected the notion "that any mere theoretical possibility of recovery under local lawSSno matter how remote or fancifulSSsuffices to preclude removal." Badon v. RJR Nabisco Inc., 236 F.3d 282, 286 n.4 (5th Cir. 2000). Accordingly, because Morgan failed to establish a cause of action against Alexander, we agree with the finding that she was fraudulently joined.[5]

Morgan next argues that the district court should have remanded, because

---

[4] Morgan and Alexander are citizens of Texas, so there was not complete diversity.

[5] See WAMCO XXCIII, Ltd. v. Casa Grande Cotton Fin. Co., 314 F. Supp. 2d 655, 657 (N.D. Tex. 2004) (finding that where trustee had been dismissed and only cause of action asserted against him was time-barred, he had been fraudulently joined).

"the Court should not accept jurisdiction since this [suit] involved a Probate Matter." A federal court may still exercise its jurisdiction, however, "so long as [it] does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in custody of the state court." Markham v. Allen, 326 U.S. 490, 494 (1946). "In determining whether a suit . . . interferes with state probate proceedings, this court considers whether the plaintiff's claim implicates the validity of the probate proceedings or whether the plaintiff is merely seeking adjudication of a claim between the parties." Breaux v. Dilsaver, 254 F.3d 533, 536 (5th Cir. 2001) (citation and internal quotations omitted).

The district court found that the dispute between Morgan and Chase "is a wrongful foreclosure case that does not interfere with any state probate proceeding." It noted that Morgan "argues that the case would be better adjudicated in the state probate court due to specialization and judicial efficiency concerns, yet makes no effort to explain how this case would implicate the validity of the probate proceedings."

On appeal, Morgan re-raises many of those same arguments but still does not explain how this case could possibly "implicate the validity of the probate proceedings." We agree with the district court; whether the Pflugerville house is part of the estate will "have no effect on the state probate court proceeding." The probate court has already ordered a division of the estate,[6] and the resolution of the claims in this case does not invalidate that division.[7] We therefore

---

[6] The probate court ordered that each of Starnes's parents take a one-quarter share of his separate real property. Morgan is entitled to the remaining half share of separate real property and all of the real community property, personal community property, and separate personal property.

[7] See Williams v. United States, 327 F. Supp. 2d 720, 723 (S.D. Tex. 2004) ("The probate limitation on federal jurisdiction stated in Markham does not foreclose a federal court's 'jurisdiction to adjudicate rights in such property where the final judgment does not undertake to interfere with the state court's possession save to the extent the state court is bound by the judgment to recognize the right adjudicated by the federal court.'") (quoting Markham, 326 (continued...)

uphold the court's exercise of jurisdiction.

## IV.

After denying Morgan's motion for remand, the district court entered an order granting Chase's motion for summary judgment and denying Morgan's. Morgan appeals that order on two grounds: first, she says that foreclosure was improper because the note was not in default; second, she avers that Chase failed to give her notice of the default and an opportunity to cure as required by § 51.002 of the Texas Property Code.

"We review a summary judgment de novo, applying the same standard as the district court. Summary judgment is proper when no issue of material fact exists and the moving party is entitled to judgment as a matter of law. Questions of fact are viewed in the light most favorable to the nonmovant and questions of law are reviewed de novo." United States v. Lawrence, 276 F.3d 193, 195 (5th Cir. 2001) (internal citations and quotations omitted).

## A.

Morgan states that the foreclosure was improper because the mortgage note was not in default. She claims that she made monthly payments on the mortgage in January, February, March, and April 2005 and has submitted receipts for the payments. Chase, on the other hand, contends that on May 12, 2005, the mortgage had been paid only through February 1, 2005, and so was in default by over three months. In support of its contention, Chase submitted a detailed payment history covering the life of the mortgage.

Morgan is only partially correct. The district court erroneously read her receipts as showing that she paid only $411 per month, "approximately half of

---

⁷ (...continued)
U.S. at 494).

the amount due." As she points out in her brief, though, "[t]he receipts show that [she] made payments of $411 in cash and made the remaining balance of her payment by check. . . . It appears that Chase and the [district court] have misread the receipts." A review of the payment history supplied by Chase confirms thisSSit documents payments of $821.75 on each of January 24, February 15, March 16, and April 15, 2005.

Despite Morgan's payments, however, the mortgage was still in default. The payment history shows that Starnes had missed several monthly payments in 2003 and 2004 that were never caught up.[8] Accordingly, when Morgan made her January, February, March, and April payments, she was actually covering amounts due on November 1, 2004; December 1, 2004; January 1, 2005; and February 1, 2005. Chase is therefore correct in stating that on May 12, when the mortgage had only been paid through February 1, it was in default by over three months.

We may affirm for any reason supported by the record, even if not relied on by the district court. United States v. Grosz, 76 F.3d 1318, 1324 n.6 (5th Cir. 1996). Accordingly, we affirm the finding that the mortgage was in default.

## B.

Morgan's second argument is that she was not given a notice of default and an opportunity to cure as required by TEX. PROP. CODE § 51.002.[9] Both

---

[8] Specifically, Starnes made no payments in June, August, or November 2003 or July 2004 but did make a double payment in December 2003. The net result is that the mortgage payments were three months behind by January 2005.

[9] The relevant part of section 51.002 says that

. . . the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to

(continued...)

parties agree that Morgan did not receive a notice. Chase, however, maintains that she was not entitled to one.

The district court agreed with Chase. It determined that only Starnes's parents were entitled to notice, because Chase was unaware of Morgan's claim to the property during the foreclosure proceedings. The court found no Texas authority stating that "in the event of the death of a debtor, the [mortgage servicer] should be required to conduct some level of investigation to determine the legal heirs for purposes of proper notification prior to foreclosure."

Morgan's primary argument on appeal is that the district court overlooked a post-oral-argument memo that cited a single case, In re Hayes, 2004 WL 2926006 (W.D. Tex. Dec. 15, 2004). There, Elizabeth Hayes sold her house to John Henderson but failed to transfer the property by general warranty deed. After payment had been made and Henderson had moved in, Hayes received a loan from a bank using the house as collateral. When Hayes later declared Chapter 7 bankruptcy, the bank asserted its lien. Henderson objected, arguing that he had superior equitable title; the bank responded that it had no notice of Henderson's claim to the house and so was a bona fide purchaser for value.

Under Texas law, open, visible, exclusive, and unequivocal possession of property is constructive notice to any subsequent purchaser and triggers a duty of inquiry. Id. at *9. The bank in Hayes, however, argued that lenders should not be held to the same duty of inquiry as individual purchasers, because "the valuation model and desktop appraisal methods it used . . . did not require physical inspection of the subject real property." Id. at *12. The court disagreed, finding that Texas law did not distinguish between lenders and individuals regarding bona fide purchaser status.

As Chase's brief points out, Hayes "had nothing to do with foreclosure or

---

[9] (...continued)
cure the default . . . .

a lender's obligations when acting on its foreclosure rights." The district court's statement that Morgan had cited no relevant authority is therefore accurate.

Moreover, even if we import the bona fide purchaser law from Hayes into the present foreclosure dispute, the "duty to ascertain the rights of a third-party possessor" arises only "if the possession is visible, open, exclusive, and unequivocal." Madison v. Gordon, 39 S.W.3d 604, 606 (Tex. 2001). And "when an occupant's possession is compatible with another's ownership assertion, the occupant's possession cannot be said to be unequivocal." Id. at 607.

Morgan's possession was not unequivocal. Before his death, Starnes contacted Chase and explicitly communicated that his "girlfriend and friend" were current tenants in the house. Thus, Morgan's possession was compatible with both Starnes's and his parents' assertions of ownership.[10]

Morgan responds that Chase was put on notice of her claim by the fax from the local branch office that parenthetically referred to her as a "common law spouse." She contends that Chase should have done more to investigate.

In the would-be bona fide purchaser context, however, Texas law only charges the purchaser with "notice of all the occupant's claims the purchaser might have reasonably discovered on proper inquiry." Madison, 39 S.W.3d at 606 (emphasis added). Chase had already (1) been told by Starnes that the people living in the house were a girlfriend and friend who needed to be evicted, (2) received an affidavit submitted by Starnes's parents stating that he was never married and that they were his sole heirs, and (3) seen an official death certificate that indicated Starnes had died single.

Further, despite a phone call requesting additional information, Morgan

---

[10] By comparison, the Hayes court noted that "Hayes represented to the [b]ank that she was a single woman and the property was her homestead, not a rental property. Thus, Henderson's occupation and possession of the property would not appear compatible with or subservient to Hayes' assurances of ownership." Hayes, 2004 WL 2926006, at *33 n.6.

did not submit any proof of her claim to Chase.[11]  And as she admits in her brief, the probate court determined that a common law marriage existed only after "a lengthy and contested hearing."  It is therefore not evident what more Chase could have reasonably discovered.

In summary, we agree with the district court's conclusion that no Texas authority required Chase to conduct a more extensive investigation than it did. Further, even if, arguendo, we were to adopt Morgan's proposed extension of bona fide purchaser law, Chase reasonably relied on the representations from Starnes, his parents, and the official death certificate.

The summary judgment is AFFIRMED.

---

[11] Morgan explains in her brief that "no documentation is required to enter into an informal marriage," and so the request for documents "is a request for Morgan to provide something which would not exist . . . ."  But given that, the further investigation Morgan believes Chase should have undertaken would apparently have been futile.