# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 22, 2020

Lyle W. Cayce
Clerk

No. 19-40799

Jay Rivera,

*Plaintiff—Appellee*,

*versus*

Kirby Offshore Marine, L.L.C., In Personam,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:17-CV-111

Before King, Stewart, and Southwick, *Circuit Judges*.
Carl E. Stewart, *Circuit Judge*:

Captain Jay Rivera was hired by Kirby Offshore Marine, L.L.C. ("Kirby") to pilot the M/V TARPON ("Tarpon"), a 120-foot seagoing vessel. While aboard the Tarpon, Captain Rivera injured his foot when he tripped over a stair inside a hatch door. Captain Rivera's injuries prevented him from continuing to work as a harbor pilot, and he sued Kirby for his lost wages. The district court held a seven-day bench trial on Captain Rivera's claims. At the end of trial, the court determined that Kirby was liable to Captain Rivera on his claim of *Sieracki* seaworthiness and that Kirby was alternatively liable under the Longshore and Harbor Workers'

No. 19-40799

Compensation Act ("LHWCA"). The court awarded Captain Rivera $11,695,136.00 in damages.  Kirby appealed. We AFFIRM.

## I. FACTS AND PROCEDURAL HISTORY

From June 2007 to July 2018, Captain Rivera was a state-commissioned Branch Pilot for the Port Aransas Bar and Corpus Christi Bay. As a Branch Pilot, he assisted vessels in navigating the Port Corpus Christi Ship Channel and the LaQuinta Channel.

Through July 2018, Captain Rivera was a member of the Aransas-Corpus Christi Pilots Association ("Association"), an unincorporated pilots association. The Association regulates the rules and procedures of licensed pilots practicing on the Port Aransas Bar, the Corpus Christi Bay, and the surrounding tributaries. The Association collects pilotage fees earned by the members, uses the fees in a common fund, and makes pro rata distributions to its members.

Captain Rivera was also the sole owner and officer of Riben Marine, Inc., an S-Corporation. Captain Rivera incorporated Riben Marine to receive his various forms of revenue. In addition to his pilot earnings, Captain Rivera also earned money as an expert witness and as a charter service provider.

On August 19, 2016, Captain Rivera was dispatched to pilot the Tarpon from the Port Aransas sea buoy to Oil Dock # 11 in the Corpus Christi Harbor. The Tarpon was indirectly owned and operated by Kirby. The Tarpon was attached to a tug and barge unit,[1] and Captain Rivera could not board the Tarpon without first boarding the barge. Captain Rivera traveled to the Tarpon by pilot boat and boarded the Tarpon using a ladder affixed to

---

[1] In a tug and barge unit, the tug fits into a notch on the barge's stern and is connected to the barge by a set of pins.

the barge.  Having just come from outside, Captain Rivera continued to wear his sunglasses while on the Tarpon.

After boarding, Captain Rivera was greeted by David Hudgins, a Kirby employee who was assigned to escort him to the Tarpon's wheelhouse.[2] Hudgins had only been working aboard the Tarpon for two days, and he had not been formally trained on how to escort pilots. Hudgins and Captain Rivera "transited to the stern of the barge where they both climbed down onto the deck" of the Tarpon. As they headed toward the Tarpon's wheelhouse, Captain Rivera slowed down and lost sight of Hudgins. Captain Rivera continued his journey to the Tarpon's wheelhouse without Hudgins escorting him.

To enter the wheelhouse, Captain Rivera had to climb over a two-foot-high bulkhead and through a watertight door. From the door, he had to use another step inside the engine-room hatch access door to step down to the interior deck area. The area was not well illuminated. When Captain Rivera reached the inside step, he stepped down toward the deck with his left foot. He landed on the hatch cover, rolled his ankle, and fell. Captain Rivera lay on the deck after his injury, and Hudgins eventually found him. Hudgins helped Captain Rivera the rest of the way to the wheelhouse. Once inside the wheelhouse, Captain Rivera requested ice and ibuprofen and reported his injury to Captain Crossman, the Tarpon's captain. Captain Rivera then piloted the Tarpon to its intended destination.

After exiting the Tarpon, Captain Rivera sought medical attention for his injury. Doctors confirmed that Captain Rivera fractured his fifth

---

[2] The wheelhouse or house is the vessel's enclosed area that normally contains the vessel's navigation quarters or engine room. *See St. Phillip Offshore Towing Co. v. Wis. Barge Lines*, 466 F. Supp. 403, 406 (E.D. La. 1979).

metatarsal of his left foot and placed his foot in an air cast. Captain Rivera experienced lingering injuries during his recovery, and doctors eventually diagnosed him with Complex Regional Pain Syndrome ("CRPS"). Captain Rivera was declared medically unfit for his mariner certification due to his condition and lingering injuries. On recommendation from the Board of Pilot Commissioners, the Governor of Texas revoked Captain Rivera's state harbor commission. After his commission was revoked, Captain Rivera lost his Association membership as well.

Captain Rivera sued Kirby under various maritime laws for negligence and vessel seaworthiness. Captain Rivera sought relief on alternative grounds for: Kirby's negligence under the common law, Kirby's breach of the duty of a seaworthy ship under *Seas Shipping Co., Inc. v. Sieracki*, 328 U.S. 85 (1946), and Kirby's negligently maintained vessel under § 905(b) of the LHWCA.

After a seven-day bench trial, the district court issued a Findings of Fact and Conclusions of Law order that concluded that the Tarpon was unseaworthy under *Sieracki* and that, in the alternative, Kirby was negligent under § 905(b) of the LHWCA. The district court also concluded that Captain Rivera was not contributorily negligent for wearing sunglasses aboard the Tarpon.

Because Captain Rivera's injuries prevented him from working as a harbor pilot, the district court awarded him damages for his past and future harbor pilot wages. Captain Rivera did not seek damages for his chartering or expert work because his injuries did not prevent him from working in these roles. The district court relied on Captain Rivera's economic expert's calculations and entered a judgment for Captain Rivera in the amount of $11,695,136.00. Kirby now appeals.

## II. STANDARD OF REVIEW

"We review legal conclusions and mixed questions of law and fact following a bench trial de novo." *In re Luhr Bros. Inc.*, 325 F.3d 681, 684 (5th Cir. 2003). The district court's factual findings are binding unless clearly erroneous. *Id.* "Questions concerning the existence of negligence and causation are treated as factual issues subject to the clearly erroneous standard." *Id.* (quoting *Avondale Indus. v. Int'l Marine Carriers, Inc.*, 15 F.3d 489, 492 (5th Cir. 1994)). We review the district court's finding of contributory negligence for clear error. *See Fisher v. Agios Nicolaos V*, 628 F.2d 308, 311–312 (5th Cir. 1980).

We review the district court's evidentiary rulings for abuse of discretion. *Am. Int'l Specialty Lines Ins. Co. v. Res-Care, Inc.*, 529 F.3d 649, 656 (5th Cir. 2008). We review damages calculations for clear error. *Deperrodil v. Bozovic Marine, Inc.*, 842 F.3d 352, 361 (5th Cir. 2016).

## III. DISCUSSION

On appeal, Kirby argues that the district court committed five errors. First, it argues that Captain Rivera is a proper plaintiff under § 905(b) of the LHWCA and is therefore ineligible to bring a claim under *Sieracki*. Second, it argues that it was error to hold it liable under § 905(b). Third, it asserts that the district court erred in holding that Captain Rivera was not contributorily negligent. Fourth, it asserts that the district court erred by permitting Captain Rivera to introduce evidence of Kirby's subsequent remedial measures. Lastly, it argues that even if it is liable for Captain Rivera's injuries, the district court improperly calculated damages because it overestimated his future earnings.

No. 19-40799

### 1. Captain Rivera's Status Under the LHWCA

Kirby argues that Captain Rivera is an employee of Riben Marine and is therefore an eligible plaintiff under 33 U.S.C. § 905(b). Kirby further argues that if Captain Rivera is eligible to bring a claim under the LHWCA, he is ineligible to bring a claim under *Sieracki*. Captain Rivera argues that he is not an employee of Riben Marine and therefore is not eligible to sue under § 905(b). We agree with Captain Rivera.

The district court concluded that Captain Rivera was not covered by the LHWCA because it was not clear "that [he] was the employee of anyone." *Bach v. Trident Steamship Co., Inc.* 920 F.2d 322, 327 n.5 (5th Cir. 1991), *vacated* 500 U.S. 949 (1991), *reinstated* 947 F.2d 1290 (5th Cir. 1991). Having determined that the record was unclear as to Captain Rivera's status as an LHWCA-covered employer, the district court analyzed his *Sieracki* unseaworthiness claim. *See id.* We review the district court's conclusion about Captain Rivera's status under the LHWCA de novo. *See New Orleans Depot Servs. Inc., v. Dir., Off. of Worker's Comp. Programs*, 718 F.3d 384, 387 (5th Cir. 2013) (en banc).

Captain Rivera's potential LHWCA claim falls under 33 U.S.C. § 905(b). Section 905(b) states that "[i]n the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel . . . ." 33 U.S.C. § 905(b). To be "a person covered under this chapter," Captain Rivera must be the employee of someone. *See Bach*, 920 F.2d at 327 n.5. Since there is no evidence that Captain Rivera was an employee while aboard the Tarpon, he cannot be covered by the LHWCA.

Kirby argues that Captain Rivera was employed by Riben Marine when he was injured upon the Tarpon. But the facts do not support such a

conclusion. Captain Rivera was requested, hired, and paid through his affiliation with the Association. Kirby does not argue that Captain Rivera is an employee of the Association,[3] and we consider harbor pilots akin to independent contractors. *See, e.g.*, *Steinhort v. Comm'r of Internal Revenue*, 335 F.2d 496, 499 (5th Cir. 1964).

Our holding is consistent with *Manuel v. Cameron Offshore Boats, Inc.* In *Manuel*, we analyzed a § 905(b) claim brought by an employee of an independent contractor. 103 F.3d 31, 32–33 (5th Cir. 1997). Because Manuel was an employee of a contractor, he was a proper plaintiff under the LHWCA. *See id.* at 33.

Captain Rivera is an independent contractor rather than someone's employee, and he is thus not covered by the LHWCA. Since he is also not a Jones Act seaman[4], he may proceed on a seaworthiness claim under *Sieracki*. *See Aparicio v. Swan Lake*, 643 F.2d 1109, 1110 (5th Cir. Unit A Apr. 1981) ("If the harbor worker is not covered by the LHWCA, the Sieracki cause of action and the concomitant indemnification action afforded the vessel owner are both still seaworthy."). We therefore affirm the district court's conclusion that Captain Rivera is a *Sieracki* seaman.

---

[3] Even if Kirby raised the argument that Captain Rivera is an employee of the Association, we would reject that argument. Associations are generally not liable for the actions of pilots. *See Steinhort v. Comm'r of Internal Revenue*, 335 F.2d 496, 499 (5th Cir. 1964). Beyond that, an association "does no business except as an agent of its individual members." *Mobile Bar Pilots Ass'n v. Comm'r of Internal Revenue* 97 F.2d 695, 697 (5th Cir. 1938).

[4] A Jones Act seaman is a "master or member of a crew of any vessel." *Chandris, Inc. v. Latsis*, 515 U.S. 347, 355–56 (1995). Neither party argues that Captain Rivera is a Jones Act seaman.

*2. Captain Rivera's Sieracki seaworthiness claim*

Having determined that Captain Rivera is a *Sieracki* seaman, we next turn to analyze his seaworthiness claim under *Sieracki*. Kirby reiterates its argument that Captain Rivera is covered by the LHWCA and thus ineligible to bring a claim under *Sieracki*. As we have already shown, that argument fails.

The district court determined that Captain Rivera's seaworthiness claim was meritorious. We review the district court's finding of unseaworthiness for clear error. *Jackson v. OMI Corp.*, 245 F.3d 525, 528 (5th Cir. 2001).

To prevail on his *Sieracki* unseaworthiness cause of action, Captain Rivera must prove that Kirby "failed to provide a vessel, including her equipment and crew, which is reasonably fit and safe for the purposes for which it is to be used." *Id.* at 527. He must also "establish a causal connection between his injury and the breach of duty that rendered the vessel unseaworthy." *Id.* at 527–28. "To establish the requisite proximate cause in an unseaworthiness claim, a plaintiff must prove that the unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." *Johnson v. Offshore Exp., Inc.*, 845 F.2d 1347, 1354 (5th Cir. 1988).

We cannot conclude that the district court committed clear error in concluding that the Tarpon was unseaworthy. Captain Rivera sufficiently demonstrated that his injuries were caused by his fall over the unmarked hatch door and that the door was a tripping hazard. Tripping hazards may render a vessel unseaworthy. *See Jussila v. M/T La. Brimstone*, 691 F.2d 217, 219–20 (5th Cir. 1982). We therefore affirm the district court's finding that the Tarpon was unseaworthy.

### *3. Captain Rivera's Contributory Negligence*

Kirby next argues that Captain Rivera was contributorily negligent by wearing sunglasses aboard the Tarpon. In the alternative, Kirby argues that the district court made insufficient findings on the contributory negligence issue. We disagree in both regards.

The district court concluded that Captain Rivera was not contributorily negligent. We review the district court's finding on the issue of contributory negligence for clear error. *See In re Luhr Bros. Inc.*, 325 F.3d at 684. "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Hobbs v. Petroplex Pipe and Constr., Inc.*, 946 F.3d 824, 829 (5th Cir. 2020) (alteration in original) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)).

Here, the district court did not err in determining that Captain Rivera was not contributorily negligent. The district court determined that Captain Rivera did not act unreasonably when he wore sunglasses aboard the Tarpon on a sunny August day. The district court also determined that the hazardous condition that caused Captain Rivera's injuries was not open and obvious. Even if he had not been wearing the sunglasses, it is not clear that he could have seen the hatch doorstep and avoided his injury. Kirby has failed to demonstrate that the district court's contributory negligence determination was clearly erroneous.

Kirby also argues that the district court made insufficient factual findings on the contributory negligence question. We again disagree.

Federal Rule of Civil Procedure 52 requires that the district court "find the facts specially and state its conclusions of law separately." FED. R. CIV. P. 52(a). The district court's findings of fact and conclusions of law

must be "sufficient in detail and exactness to indicate the factual basis for the ultimate conclusion reached by the court." *Lettsome v. United States*, 434 F.2d 907, 909 (5th Cir. 1970).

The record indicates that the district court gave Kirby's contributory negligence argument full consideration. The district court's findings of fact and conclusions of law on the contributory negligence question are well within the specificity required by Rule 52. Beyond its legal conclusions, the district court also made several factual findings that indicate the basis for its determination. The district court determined that the edges of the hatch cover were not marked, that the hatch was unusually placed, and that the hatch cover was oddly positioned and difficult to see. We conclude that the district court's findings of fact were sufficient to indicate the basis for its ultimate conclusion that Captain Rivera was not contributorily negligent.

### 4. Subsequent Remedial Measures

Kirby next argues that the district court erred by allowing Captain Rivera to introduce evidence of a subsequent remedial measure. We disagree.

We review evidentiary rulings during a bench trial for abuse of discretion. *Am. Int'l Specialty Lines Ins. Co.*, 529 F.3d at 656. Even where the district court committed an error, we reverse only where the error affects a party's substantial rights. *See* FED. R. EVID. 103(a).

The district court allowed Captain Rivera to admit evidence of a photo showing that Kirby later placed reflective tape near the area where Captain Rivera was injured. Though the district court initially precluded Captain Rivera from introducing the evidence, it eventually let him after determining that Kirby opened the door.

Assuming *arguendo* that the district court erroneously admitted evidence of a subsequent remedial measure, Kirby has not demonstrated that the error affected its substantial rights.

Kirby points to the district court's mention of the photo as evidence that its substantial rights were violated.  Even without the photograph, there was evidence from which the court could conclude that Kirby was negligent. The district court's findings that the hazard was not visible and that the hatch was in an unusual place support a ruling for Captain Rivera, and this evidence exists independent of the photograph that Kirby takes issue with. We therefore hold that the district court did not abuse its discretion by admitting evidence of Kirby's subsequent remedial measures.

## *5. Damages*

Kirby's final argument is that the district court erred in assessing Captain Rivera's lost future earnings. We disagree here as well.

The district court determined that Captain Rivera was entitled to damages for his lost future earnings. Using Captain Rivera's expert's calculations, the district court awarded him damages of $11,695,136.00. We review the district court's calculation of damages for clear error. *Deperrodil*, 842 F.3d at 361.

To determine lost future earnings in a maritime case, we (1) estimate the plaintiff's loss of work-life or expected remaining work-life; (2) calculate the lost income stream; (3) compute the total damage; and (4) discount that total to present value. *Culver v. Slater Boat Co.*, 722 F.2d 114, 117 (5th Cir. 1983). Kirby disputes the second step of the *Culver* analysis, the district court's calculation of Captain Rivera's lost income stream.

The district court adopted the recommendation of Captain Rivera's economic expert. Captain Rivera's expert used Riben Marine's Schedule K-

1 tax forms to gauge his income rather than his personal tax returns. Riben Marine received Captain Rivera's pilot income as well as the income from his work as an expert and a charterer. Riben Marine's K-1 documents reflected the income that he earned from his pilot earnings. Captain Rivera's personal tax returns reflected the total income from his various income streams.

Had the district court relied on Captain Rivera's personal tax returns as Kirby suggests, the damages calculation would have been in error. Captain Rivera sought damages for his lost future wages as a harbor pilot. He did not seek damages for his work as an expert or a charterer because he was able to continue working in those roles after he was injured. His personal tax returns reflected his income from all three roles whereas Riben Marine's K-1 forms reflected his pilot earnings separately. Had the district court actually relied on his personal tax returns, the returns would have inflated his pilot income. The district court did not err when it used Riben Marine's K-1 forms.

Lastly, Kirby cites *Tran v. Abdon Callais Offshore, LLC*, No. 12-0999, 2014 WL 12538905, at *2 (E.D. La. Sept. 22, 2014) for the proposition that tax returns should be used as evidence of earnings. *Tran* says that tax returns can be used to estimate earnings, but it does not say that using tax returns to estimate earnings is required. Kirby has thus not demonstrated that the use of tax returns was clearly erroneous.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's conclusion that Captain Rivera was a *Sieracki* seaman and prevails on his unseaworthiness claim. We also AFFIRM the court's conclusions as to Captain Rivera's lack of contributory negligence, the admission of the photo evidence, and Captain Rivera's damages.