# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 12, 2024

Lyle W. Cayce
Clerk

No. 23-20095

Shanon Roy Santee,

*Plaintiff—Appellant*,

*versus*

Oceaneering International, Incorporated; Transocean Offshore Deepwater Drilling, Incorporated; Chevron USA, Incorporated,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-3489

———————————————————————

Before Stewart, Duncan, and Engelhardt, *Circuit Judges*.
Carl E. Stewart, *Circuit Judge*:

In this maritime personal injury case, Plaintiff Shanon Roy Santee ("Santee") appeals the district court's denial of his motion to remand and grant of summary judgment in favor of Defendants Oceaneering International, Inc. ("Oceaneering"), Transocean Offshore Deepwater Drilling, Inc. ("Transocean"), and Chevron USA, Inc. ("Chevron") (collectively, "Defendants"). For the following reasons, we AFFIRM.

No. 23-20095

## I. Facts & Procedural History

From 1999 to 2021, Santee worked in the offshore drilling industry as a remote-operated vehicle ("ROV") technician. ROVs are submersible machines that provide underwater visibility for offshore drilling operators and service areas unreachable by human divers. ROV technicians operate the ROVs from a command center aboard the vessel and typically service the vessel for a twenty-one-day or twenty-eight-day period. During his career, Santee worked primarily for Oceaneering, a company that provides subsea engineering and exploration services. After 2016, he worked mostly aboard the *M/V Deepwater Conqueror*, a drillship serviced by Transocean, an offshore drilling contractor.[1] Chevron contracted with Oceaneering and Transocean to provide underwater exploration and drilling services.

In January 2021, Santee allegedly sustained a severe injury to his shoulder and neck while servicing an ROV onboard the *Deepwater Conqueror* in service to the Chevron contract. Santee's injury occurred while he was replacing a thirty-pound cursor pin on a launch and recovery system ("LARS"), a device that releases and recaptures ROVs from the water. The cursor pins hold the ROV in place during the ROV repair process. To conduct this routine maintenance, the ROV technicians raise the LARS device with a hydraulic power unit, then climb a ladder to reach the port for the cursor pins. From that position, the technician then reaches up with one hand to install the pin. During this motion, Santee alleged that he felt a "pop" and sharp pain in his right shoulder. Santee averred that his condition

_____

[1] The drillship's owner and operator, Triton Conqueror GmbH, was not a named party in this suit.

worsened after his injury and required surgical fusion of the vertebrae in his neck.

In September 2021, Santee filed suit against Defendants in Texas state court. He brought claims under the Jones Act, general maritime law, and the Saving to Suitors Clause, under theories of negligence and unseaworthiness against Defendants. Defendants then removed the action to the Southern District of Texas, asserting that federal question jurisdiction, general admiralty jurisdiction, and original jurisdiction under the Outer Continental Shelf Lands Act ("OCSLA") governed Santee's claims.

Santee moved to remand the case to state court, arguing that his claims were not removable because he is a "seaman" under the Jones Act. Defendants countered that Santee fraudulently pleaded his Jones Act claims, thus providing the district court with exclusive jurisdiction under OCSLA. In his reply, Santee further asserted that Defendants waived their fraudulent pleading argument because it was not raised in their notice of removal. The district court denied Santee's motion and held that he had fraudulently pleaded his Jones Act claim to avoid removal because he was not a seaman at the time of his injury. It further held that it had original jurisdiction under OCSLA because the *Deepwater Conqueror* was attached to a seabed of the Outer Continental Shelf ("OCS") at the time Santee was injured. The district court denied Santee's motion for reconsideration.

After the close of discovery, Defendants moved for summary judgment. The district court granted Oceaneering's motion for summary judgment on the basis that Santee could not maintain a claim for negligence against his employer as a matter of law because he was not a Jones Act seaman. Santee then filed motions to compel discovery and for a continuance of the summary judgment submission date. The district court denied both requests. The district court granted summary judgment in favor of

No. 23-20095

Transocean and Chevron because it had determined that Santee was not a seaman, and thus was bound to the exclusive remedy provisions of the Longshore and Harbor Workers' Compensation Act ("LHWCA"). It further held that Santee's unseaworthiness claim against Transocean was barred under the LHWCA because he was not a Jones Act seaman. The district court also granted summary judgment on Santee's negligence and unseaworthiness claims against Chevron due to the lack of evidence of operational control and ownership of the drillship. Santee timely appealed.

## II. Standard of Review

This court reviews "both the denial of a motion to remand and the grant of summary judgment de novo." *Sanchez v. Smart Fabricators of Tex., L.L.C.*, 997 F.3d 564, 568 (5th Cir. 2021) (en banc). Summary judgment is appropriate if the record evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *See Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003). "[R]easonable inferences are to be drawn in favor of the non-moving party." *Robinson v. Orient Marine Co.*, 505 F.3d 364, 366 (5th Cir. 2007).

## III. Discussion

On appeal, Santee raises five assignments of error. He challenges the district court's denial of his motion to remand and each of the summary judgments in favor of Oceaneering, Transocean, and Chevron. In the alternative, Santee asserts that the district court abused its discretion in denying his motion for a continuance to collect more evidence to oppose Transocean's and Chevron's motions for summary judgment. We address each issue in turn, beginning with the motion to remand.

4

## A. Motion to Remand

The Jones Act provides "a seaman" a cause of action for negligence against his seafaring employer. 46 U.S.C. § 30104. However, only seamen may bring Jones Act claims. Such claims filed in state court generally are "not subject to removal to federal court." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 455 (2001) (noting that 28 U.S.C. § 1445(a), which bars removal of certain suits involving railroads, is incorporated into the Jones Act). However, a Jones Act claim that is "fraudulently pleaded," or pleaded where there is a strong likelihood that the plaintiff will not be able to prove seaman status, may be removed if there is an independent basis of federal jurisdiction. *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 345 (5th Cir. 1995). Thus, remand is inappropriate where "resolving all disputed facts and ambiguities in current substantive law in plaintiff's favor, the court determines that the plaintiff has *no possibility* of establishing a Jones Act claim on the merits." *Holmes v. Atl. Sounding Co.*, 437 F.3d 441, 445 (5th Cir. 2006) (emphasis added) (citation omitted), *abrogated on other grounds by Lozman v. City of Riviera Beach*, 568 U.S. 115 (2013). If a party is not a Jones Act seaman, then his only remedy lies in the form of compensation benefits under the LHWCA. *Becker v. Tidewater, Inc.*, 335 F.3d 376, 386 (5th Cir. 2003); 33 U.S.C. §§ 904, 905(a).

The Supreme Court has established a two-pronged test to determine whether a party is a seaman under the Jones Act. *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 354–55 (1991). To be a seaman: (1) the plaintiff's duties must contribute to the function or mission of the vessel, and (2) the plaintiff must have a connection to the vessel or fleet of vessels that is substantial in duration and in nature. *See id.*; *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995). In *Sanchez v. Smart Fabricators of Texas, L.L.C.*, our en banc court enumerated additional factors relevant to the second prong of the

seaman test. 997 F.3d at 574. The court posed the factors in the form of the following three questions:

> (1) Does the worker owe his allegiance to the vessel, rather than simply to a shoreside employer?
>
> (2) Is the work sea-based or involve seagoing activity?
>
> (3) (a) Is the worker's assignment to a vessel limited to performance of a discrete task after which the worker's connection to the vessel ends, or (b) Does the worker's assignment include sailing with the vessel from port to port or location to location?

*Id.* (footnote omitted).

Considering these questions posed in *Sanchez*, the district court held that two of the three factors weighed against Santee. It posited that Santee owed allegiance to Oceaneering, a land-based employer that did not own or operate the *Deepwater Conqueror*. Based on this determination, it further held that Santee was not personally assigned to the *Deepwater Conqueror* or to any fleet of vessels to which it belonged. The district court noted that "[t]he only factor weighing in favor of finding Santee satisfies the nature requirement is the fact [that] his work was sea-based." Thus, it concluded that Santee was not a seaman under the Jones Act and denied removal based on his fraudulent pleading because he has "no reasonable possibility of establishing a Jones Act claim."

Santee raises three arguments with respect to the remand issue. First, he asserts that Defendants waived or forfeited the doctrine of fraudulent pleading under the Jones Act because they failed to mention it in their notice of removal. He contends that Defendants' failure to raise fraudulent pleading before its opposition to the motion to remand constitutes forfeiture of the

argument. Second, he avers that Defendants failed to demonstrate that he "ha[d] *no possibility* of establishing his claim on the merits" because he was a Jones Act seaman. Third, he alternatively contends that Defendants' conclusory assertions related to the situs of the vessel at the time of the injury in their notice of removal do not establish original jurisdiction under OCSLA. For the reasons explained below, we are not persuaded by any of these arguments.

### i. Forfeiture

Although 28 U.S.C. § 1446(a) states that a notice of removal must "contain[] a short and plain statement of the grounds for removal," we have held that detailed grounds are not necessary. *Ticer v. Imperium Ins. Co.*, 20 F.4th 1040, 1045–46 (5th Cir. 2021). We have further clarified that a notice of removal need only "adequately inform the plaintiff of the grounds for removal." *Id.* In *Hoyt v. Lane Construction Corp.*, the removing party's notice of removal listed diversity jurisdiction as a ground for removal based on developments in the case. 927 F.3d 287, 294–95 (5th Cir. 2019). The movants sought remand of their claims after the involuntary dismissal of the non-diverse defendant based on the voluntary-involuntary rule.[2] *Id.* The removing party failed to list the improper-joinder exception to the voluntary-involuntary rule in its notice of removal. *Id.* at 295 n.2. It did not raise the exception until it filed its opposition to the movants' second motion to remand. *Id.* When confronted with the argument that the removing party

---

[2] The voluntary-involuntary rule provides that a matter for which there was not complete diversity at the time of filing may be removed to federal court under diversity jurisdiction if the resident defendant that ruined complete diversity was dismissed from the case by voluntary act of the plaintiff. *Hoyt*, 927 F.3d at 294–97. *See* 28 U.S.C. §§ 1332(a)(1), 1441, 1446(b)(3). This rule, however, does not apply if dismissal was the result of the defendant or the court's action against the plaintiff's wish, such as a Rule 12(b)(6) dismissal. *Id.* at 295; *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 532 (5th Cir. 2006).

waived its argument that the improper-joinder exception applied, the panel declined to hold that the argument was waived or forfeited because "[w]e do not require a litigant to anticipatorily rebut all potential arguments his adversary may raise." *Id.* The panel concluded that "[f]ailing to do so is not a forfeiture." *Id.*

*Hoyt* is instructive here. Defendants invoked federal question and admiralty jurisdiction in their notice of removal. The fact that they did not anticipate the arguments made in Santee's subsequent motion to remand is not fatal to their arguments on appeal. Defendants' fraudulent pleading argument is an exception or rebuttal to the general statutory rule that Jones Act claims brought in state court are not removable. *See* 28 U.S.C. § 1445(a). Thus, Santee's first argument does not command reversal of the district court's determination.

### ii. Seaman Status

As a general rule, Jones Act claims brought by a seaman in state court are not removable. *Fields v. Pool Offshore, Inc.*, 182 F.3d 353, 356 (5th Cir. 1999). "However, a fraudulently pleaded Jones Act claim does not bar removal." *Id.* (citing *Burchett v. Cargill, Inc.*, 48 F.3d 173, 175 (5th Cir. 1995)). In determining whether removal is appropriate on the basis of fraudulent pleading, we permit a district court "to use a summary judgment-like procedure for disposing" of claims. *Burchett*, 48 F.3d at 176. To be a Jones Act seaman, a plaintiff must (1) undertake duties that contribute to the function or mission of the vessel, *and* (2) have a connection to the vessel or fleet of vessels that is substantial in duration and in nature. *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 554 (1997).

The three *Sanchez* factors relevant to the second prong of the test are whether (1) the plaintiff's allegiance is to its land-based employer or to the vessel, (2) the plaintiff's work is sea-based, and (3) the plaintiff's assignment

is limited to performance of a discrete task. *Sanchez*, 997 F.3d at 574. Here, we agree with the district court that two of the three factors weigh against Santee. The record shows that his allegiance is to a land-based employer, and he was assigned as a transitory worker limited to the performance of a discrete task and is free to take other jobs between hitches.

Santee argues that he is a Jones Act seaman because he easily meets several of the requirements of the seaman test: his contribution to the vessel's mission, duration of employment on the vessel, and the sea-based activity he undertook on the vessel. He contends that the district court ignored the contention that the "duration" prong of the seaman test "overlaps with— and informs—the 'allegiance' and 'assignment' principles." In support of his argument, he cites a law review article and two district court cases. He concludes that the evidence in this case of his extensive employment history on the vessel establishes a "dual allegiance scenario." We disagree.

In *Sanchez*, this court addressed whether a welder that spent most of his recent career servicing one fleet of vessels was a Jones Act seaman. 997 F.3d at 576. The welder was working for a contractor to repair a docked vessel when he sustained a severe injury. *Id.* at 567. We noted that there are "two types of workers . . . found on drilling rigs": the "drilling crew" or "workers who support" drilling operations and the "specialized transient workers, usually employed by contractors." *Id.* at 576. The welder easily satisfied the first prong of the seaman-status test but was held to not be a seaman because two of the three factors to satisfy the nature element of the second prong weighed against him. *Id.* at 575–76 (failing to satisfy assignment and seagoing nature factors). Specifically, the transient, specialized nature of his work weighed against a determination that the welder was a Jones Act seaman. *Id.*

Similar to the welder in *Sanchez*, Santee fails to provide evidence of two of the three factors required to satisfy the second prong of the seaman

test. Here, Santee's attempt to recast himself as an entrenched crewmember of the vessel is not enough to establish allegiance to the vessel. Just as in *Sanchez*, where a transient employee of a contractor to a vessel spends nearly all of his total employment time with the vessel, that alone is not enough to satisfy the nature prong of the Jones Act seaman inquiry. *See id.* at 574–76. As Defendants point out, Santee's work record shows that he was never *permanently* assigned to work aboard any one vessel or fleet of vessels.

This court's jurisprudence does not consider duration of service on one vessel as evidence of allegiance to that vessel. Rather, we have considered such evidence as necessary to establish only the duration prong of the seaman test. *See id.* at 574. Santee's reliance on solely persuasive as opposed to controlling authority for this proposition confirms that he is asking this court to create new law as to this factor from *Sanchez*. We decline to do so. Thus, Santee's second argument also fails, and we hold that the district court did not err in determining that Santee fraudulently pleaded his seaman status.

### iii. OCSLA

OCSLA extends federal question jurisdiction over cases "arising out of, or in connection with" any operation involving the "development" of minerals on the OCS. 43 U.S.C. § 1349(b)(1)(A). In assessing whether OCSLA applies, this court uses a "but-for test, asking whether: (1) the facts underlying the complaint occurred on the proper situs; (2) the plaintiff's employment furthered mineral development on the OCS; and (3) the plaintiff's injury would not have occurred but for his employment." *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 213 (5th Cir. 2013). It has been broadly accepted that jack-up rigs or other vessels that drill into the seabed typically satisfy these requirements. *Id.* ("Accordingly, the jack-up rig is a proper OCSLA situs for the purpose of this tort action."); *see Grand Isle Shipyard,*

No. 23-20095

*Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 784–85 (5th Cir. 2009) (holding same).

Santee argues that even if he is not a Jones Act seaman, "no federal jurisdiction exists under OCSLA" because the location of the drillship is an insufficient situs lacking connection to the OCS to confer jurisdiction. Santee further asserts that OCSLA's choice of law provision, 43 U.S.C. § 1333(a)(1)(A), serves as a statutory bar excluding ships and vessels from its coverage. Santee also contends that the district court erred because "there was no allegation that the *Deepwater Conqueror* was attached to the sea bed" in his complaint. On the other hand, Defendants assert that Santee misreads this court's jurisprudence regarding OCSLA's jurisdictional grant to require attachment to the seabed at the time of the injury. Defendants further argue that regardless of that determination, the *Deepwater Conqueror* was "attached to the OCS seabed at the time of the accident."

We agree with Defendants. It is undisputed that the *Deepwater Conqueror* was "performing drilling and completion operations . . . *in connection with* the development of hydrocarbons" at the time of his injury. Moreover, Defendants' affidavits presented that the *Deepwater Conqueror* was attached to the OCS seabed while performing these drilling operations. Santee's argument that his state court pleading omitted any facts about the drillship's attachment to the OCS seabed is of no consequence because "removal is appropriate if federal jurisdiction exists under a separate statute." *Morris v. T E Marine Corp.*, 344 F.3d 439, 444 (5th Cir. 2003) (affirming denial of remand based on OCSLA). Thus, we hold that the district court did not err in denying Santee's motion to remand.

## B. Motions for Summary Judgment

Having determined that the district court did not err in denying Santee's motion for remand, we address his remaining four assignments of

error—the propriety of the district court's summary judgments in favor of each Defendant and its denial of Santee's motion for a continuance of Transocean's and Chevron's motions.

### i. Summary Judgment as to Oceaneering

A non-seaman employee that is injured from "operations conducted on the [OCS] for the purpose of exploring for, developing, removing, or transporting by pipeline the natural resources" is limited to the workers' compensation regime under the LHWCA. 43 U.S.C. § 1333(b). Oceaneering moved for summary judgment on the basis that it is immune from tort liability under the LHWCA's exclusive remedy provision. The district court granted the motion on the basis that it had already determined that Santee was not a Jones Act seaman and thus could not maintain any cause of action for negligence.

On appeal, Santee argues that "numerous fact issues exist as to whether Santee was a Jones Act seaman—including as to his allegiance to the *Deepwater Conqueror* and his indefinite assignment there." Because we hold that the district court did not err in determining that Santee was not a Jones Act seaman and fraudulently pleaded his Jones Act claims, this argument fails. Thus, the district court did not err in granting summary judgment in favor of Oceaneering.

### ii. Summary Judgment as to Transocean

The district court granted summary judgment in favor of Transocean because it determined that Transocean did not breach its limited vessel-owner duties under *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156 (1981). Under the LHWCA, a vessel owner owes three limited duties to maritime workers aboard their vessels. *Kirksey v. Tonghai Mar.*, 535 F.3d 388, 391 (5th Cir. 2008). The three *Scindia* duties are turnover, active control, and intervention. *See id.* Santee argues that there are significant factual disputes

as to each *Scindia* duty and his unseaworthiness claim against Transocean. Beginning with the turnover duty, we address each of his claims of breach of duty.

### a. Turnover

The turnover duty imposes two related obligations on the vessel owner. First, a vessel "owner owes a duty to exercise ordinary care under the circumstances to turn over the ship and its equipment in such condition that an expert stevedore can carry on stevedoring operations with reasonable safety." *Id.* at 392. Second, it "owes a duty to warn the stevedore of latent or hidden dangers which are known to the vessel owner or should have been known to it." *Id.* This duty to warn does not extend to "dangers which are either: (1) open and obvious or (2) dangers a reasonably competent stevedore should anticipate encountering." *Id.*

Santee asserts that the district court "sp[un] facts and reasonable inferences in the light most favorable to Transocean" in granting summary judgment. Specifically, Santee argues that Transocean knew or should have known that the vessel's LARS deck was not large enough to accommodate the ROV equipment. He contends that Transocean's failure to stop "the ongoing and unreasonable cursor-pin changeout procedure" constituted a breach of the duty to turn over the deck to Santee in a reasonably safe condition. He contends that the district court's determination that Transocean had no opportunity to learn of the dangerous nature of the equipment because Oceaneering owned and operated it is unsupported by the record.

These arguments are unpersuasive. Setting aside the fact that Santee forfeited his argument about the ownership of the ROV equipment and LARS deck by never raising it in his opposition to summary judgment, he fails to point to facts in the record to show a fact dispute that the hazardous

equipment was not open and obvious, or subject to his own control. *See id.* The record shows that Santee had the final authority over ROV repairs and conduct on the LARS deck and that the conditions were open and obvious. By Santee's own admission, there was no fact dispute as to the open and obvious nature of the hazardous condition of the equipment. As discussed above, the turnover duty does not extend to open and obvious hazards. *Id.* Thus, the district court did not err in determining that no genuine disputes of material fact existed as to Transocean's turnover duty.

### b. Active Control

The duty of active control imposes on the vessel owner the obligation to "exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas, or from equipment, under the active control of the vessel during the" operation. *Scindia*, 451 U.S. at 167. The duty of active control is obviated where the vessel "has relinquished control over an area to the [plaintiff]" such that "it is the primary responsibility of the [plaintiff] to remedy a hazard in that area." *Pimental v. LTD Canadian Pac. Bul*, 965 F.2d 13, 16 (5th Cir 1992). Essentially, this duty arises where the vessel exercises actual control and influence over the "actual methods and operative details of the longshoreman's work." *Romero v. Cajun Stabilizing Boats, Inc.*, 307 F. App'x 849, 851–52 (5th Cir. 2009) (per curiam) (quoting *Pledger v. Phil Guilbeau Offshore, Inc.*, 88 F. App'x 690, 692 (5th Cir. 2004) (per curiam)).

Santee contends that the district court disregarded substantial evidence showing that Transocean controlled the activities of the "folks on th[e] drill ship." He further notes that deposition testimony from representatives of Transocean and Chevron showed that Transocean had taken basic precautions to ensure the safety of all aboard the *Deepwater Conqueror* by ordering basic safety training and setting protocols. Defendants counter that the summary judgment record indisputably demonstrated that

Oceaneering controlled the LARS deck. They assert that summary judgment was appropriate based on Santee's testimony that he installed the LARS and ROV equipment and his concession "that he had the 'ability to take whatever time' he needed to get the job done safely, and that it was 'totally' under his own control."

We agree with Defendants. This court has said that "[t]he daily presence of the vessel's agents to apprise the progress of work or to ensure some degree of orderliness is not 'active control.'" *Romero*, 307 F. App'x at 851 (citing *Fontenot v. United States*, 89 F.3d 205, 208 (5th Cir. 1996)). Santee has not pointed to evidence in the record showing that Transocean had actual control of the LARS deck area, that is, had the ability to control the activities and work done by Oceaneering's staff on the ROVs or the LARS. The testimony that Santee cites in support of his argument that Transocean accepted actual control by issuing basic safety trainings and precautions lacks any reference or discussion of the LARS deck or ROV cursor pin replacement. A brief look at prior precedent further demonstrates this.

In *Pimental v. LTD Canadian Pacific Bul*, the plaintiff, an employee of a stevedore, slipped on an oil patch on the landing of a crane deck aboard an offshore vessel. 965 F.2d at 14–15. He argued that the vessel owner breached its active control duty due to the presence of oil and grease and inadequate lighting. *Id.* at 15. Upon review of the judgment as a matter of law against the plaintiff, the panel held that the plaintiff failed to present evidence supporting the vessel owner's liability because it relinquished control over the area to the stevedore, the plaintiff's employer. *Id.* at 16–17. It noted that the crane was solely operated by employees of the stevedore and that his injury occurred in a place inaccessible to the vessel owner's personnel. *Id.* Thus, the panel concluded that no breach of the active control duty occurred under those circumstances because "the crane and the crane housing were not under the active control of the vessel." *Id.* at 17.

Just as in *Pimental*, the LARS deck, the area where the ROVs were repaired, launched, and collected, was under the active control of Oceaneering. Santee, as supervisor, testified as to Oceaneering's control of the LARS deck. Santee's reliance on evidence in the record that Transocean had a general duty to ensure safety aboard the vessel during its operations does not establish a fact dispute as to breach of the duty of active control over the area where he sustained his injury. The facts that Santee installed the LARS assembly on the deck and had the ability to stop work on the deck in any conditions he deemed unsafe, as Oceaneering's ROV supervisor, demonstrate that Oceaneering attained control of the LARS deck area. *See Turner v. Costa Line Cargo Servs., Inc.*, 744 F.2d 505, 510–11 (5th Cir. 1984) (holding that where the vessel owner relinquishes control to a stevedore, the stevedore assumes the responsibility to remedy the hazard in that area). Thus, the district court did not err in holding that Santee failed to present evidence creating a genuine issue of material fact as to Transocean's active control duty.

### c. Intervene

Santee's duty to intervene arguments fail for similar reasons. This duty imposes liability "if the vessel owner fails to intervene in the stevedore's operations when he has actual knowledge both of the hazards and that the stevedore, in the exercise of obviously improvident judgment means to work on in the face of it and therefore cannot be relied on to remedy it." *Manson Gulf, L.L.C. v. Mod. Am. Recycling Serv., Inc.*, 878 F.3d 130, 134 (5th Cir. 2017) (internal quotation marks and citation omitted).

Santee argues that "Transocean's daily directives, monitoring, and involvement in Oceaneering's ROV work [] provide circumstantial evidence that Transocean personnel actually knew of the improper procedure that Santee and other ROV technicians utilized to change out the cursor pin." He

further contends that Transocean's failure to intervene while being aware of the hazards presented by the method of replacing the LARS cursor pin constitutes a breach of its duty to intervene. Santee's arguments again miss the mark. He provides conclusory assertions that Transocean personnel actually knew of the impropriety of the cursor pin replacement procedure and thus breached the duty to intervene. As the district court concluded, none of this demonstrates that Transocean attained actual knowledge of the alleged dangerous condition. Thus, we hold that the district court did not err in granting summary judgment to Transocean.

### d. Unseaworthiness

The LHWCA prohibits a plaintiff who is not a seaman from bringing a cause of action based on "the warranty of seaworthiness or a breach thereof at the time the injury occurred." 33 U.S.C. § 905(b). Santee contends that he may maintain an unseaworthiness claim because he was injured while "doing traditional work of a seaman." Pointing to this court's decision in *Rivera v. Kirby Offshore Marine, L.L.C.*, 983 F.3d 811 (5th Cir. 2020), he further argues that he can bring an unseaworthiness claim as long as he demonstrates that the "unseaworthy condition played a substantial part in bringing about or actually causing [his] injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." He bases his arguments on the factual leaps that we have already rejected herein and a misreading of circuit precedent.

In *Rivera*, the plaintiff sustained a severe injury after tripping over a hatch cover panel aboard a vessel. *Id.* at 815. The district court had determined at a bench trial that the plaintiff was an independent contractor and thus not covered by the LHWCA. *Id.* at 817. It then determined that the vessel was unseaworthy under *Seas Shipping Co. v. Sieracki*, 328 U.S. 85 (1946), and that the vessel owner was negligent under § 905(b) of the

LHWCA in creating the dangerous condition. *Id.* at 816. On appeal, the panel held that the plaintiff could "proceed on a seaworthiness claim under *Sieracki*" because he was "an independent contractor rather than someone's employee" and "not a Jones Act seaman." *Id.* at 817.

With this context in mind, it becomes clear that *Rivera* does not create an unseaworthiness claim where a non-seaman plaintiff is "injured doing the traditional work of a seaman." *Burks v. Am. River Transp. Co.*, 670 F.2d 69, 71 n.1 (5th Cir. Unit A June 1982). The district court correctly determined that Santee was not a Jones Act seaman, and that he was a covered employee under the LHWCA. Thus, § 905(b) bars Santee's unseaworthiness claim against Transocean, and summary judgment was proper as to Transocean on this claim.[3]

### iii. Summary Judgment as to Chevron

A principal may be held liable for the unsafe practices of an independent contractor where it "expressly or impliedly authorize[s] the *particular manner* which [] render[s] the work unsafe." *Echeverry v. Jazz Casino Co.*, 988 F.3d 221, 233 (5th Cir. 2021) (citation omitted). Santee argues that the district court erred in granting summary judgment for Chevron as to his negligence and unseaworthiness claims because genuine issues of material fact as to its ownership of the vessel existed. Again, we disagree.

_____

[3] This determination is underscored by the Supreme Court's and this court's established jurisprudence indicating that the scheme for compensating injured maritime workers varies based upon the classification of the maritime worker. *See Latsis*, 515 U.S. at 355–56 (holding that the Jones Act and the LHWCA are "mutually exclusive compensation regimes"); *see also* David W. Robertson, *The Supreme Court's Approach to Determining Seaman Status: Discerning the Law Amid Loose Language and Catchphrases*, 34 J. Mar. L. & Com. 547, 547–49, 554–82 (2003).

### a. Negligence-Operational Control

Santee bases his negligence arguments on the fact that Chevron contracted with Oceaneering and, "at least, impliedly authorized [its] negligent actions." He contends that under Louisiana law, a genuine issue of material fact as to operational control exists where a principal's contract requires a contractor to comply with "safety instructions" and where its own personnel conduct safety checks.

Santee's arguments again fail. He relies primarily on personal injury cases divorced from the marine context and misinterprets their holdings to create a theory of Chevron's possible operational control. He ignores established precedent of this court that maintains that setting general workplace safety rules and policies of work priorities "generally do[es] not establish operational control as a matter of public policy." *Coleman v. BP Expl. & Prod., Inc.*, 19 F.4th 720, 730–31 (5th Cir. 2021); *see also LeJeune v. Shell Oil Co.*, 950 F.2d 267, 270 (5th Cir. 1992) (citation omitted) (holding that principal's "general right to order the work stopped or resumed . . . make suggestions or recommendations . . . or to prescribe alterations or deviations" is insufficient to show control). In *Coleman v. BP Exploration and Production, Inc.*, this court rejected the exact same argument that evidence of general safety protocols is sufficient to establish a fact dispute as to operational control of a contracting party. 19 F.4th at 730–31. In that case, the plaintiff sustained an injury from scaffolding at an offshore drilling platform where the contracting principal provided safety protocols and work priorities, and even provided the tools to build the scaffolding. *Id.* at 731. Nonetheless, we held that those facts did not show that the principal "exercised operational control by directing or 'influenc[ing]'" the conduct of work. *Id.*

*Coleman* is indistinguishable from the facts here. The plaintiff there made a similar argument as to operational control, which the panel then

rejected. A look at the master agreement between Chevron and Oceaneering further affirms the determination of operational control. For instance, Oceaneering was designated as an independent contractor with "complete control, supervision and direction" over its workers "and over the manner and method of the performance of the Services." The parties also contracted for Oceaneering to provide training for and supervise its own staff and provide its own equipment. Santee fails to address or rebut our circuit precedent holding that contractual provisions that assign the role of control and direction to an independent contractor deprive the principal of operational control. *See Coulter v. Texaco, Inc.*, 117 F.3d 909, 912 (5th Cir. 1997) (disposing of claim against principal due to contractual provision assigning contractor the role of "control and direct[ing]" employees). Thus, the district court did not err in granting summary judgment in favor of Chevron.

### b. Seaworthiness

"A vessel's owner is duty bound to furnish a vessel reasonably fit for its intended purpose." *Terral River Serv. Inc. v. SCF Mar. Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021) (citation omitted). A party that charters a vessel is liable for its unseaworthiness only where "the vessel owner transfers full possession and control to the charterer, who in turn furnishes the crew and maintenance for the vessel." *Forrester v. Ocean Marine Indem. Co.*, 11 F.3d 1213, 1215 (5th Cir. 1993) (per curiam). Santee contends that Chevron constructively possessed the vessel because it contracted with Transocean and controlled it through shoreside and onboard personnel. Santee further asserts that the district court erred by observing the opposite based on Chevron's limited personnel aboard the vessel. Santee fails to show a fact dispute as to full ownership and control over the vessel because he advances conclusory allegations from Chevron's contracts with Transocean. The record is devoid of evidence as to whether Chevron, as a charterer,

"furnishe[d] the crew and maintenance for the vessel." *See id.* Thus, the district court did not err in granting summary judgment as to Santee's unseaworthiness claim against Chevron.

### iv. Denial of Motion for Continuance

Santee alternatively contends that the district court abused its discretion in denying his untimely motion to continue the submission date to obtain more discovery in opposition to Transocean's and Chevron's motions for summary judgment. Federal Rule of Civil Procedure 56(d) provides that a party may seek a continuance or other appropriate relief where he "cannot present facts essential to justify [his] opposition." FED. R. CIV. P. 56(d). The party filing a motion for a continuance must show "how additional discovery will create a genuine issue of material fact." *Canady v. Bossier Par. Sch. Bd.*, 240 F.3d 437, 445 (5th Cir. 2001) (citation omitted). The crucial question is "whether the evidence requested would affect the outcome of a summary judgment motion." *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 423 (5th Cir. 2016). A district court may deny such a request where a motion fails to "identify specific facts . . . that would alter the district court's analysis" or "in any way demonstrate how the additional discovery would likely create a genuine dispute of material fact." *MKD Sociedad De Responsabilidad Limitada v. Proplant Inc.*, 25 F.4th 360, 367 (5th Cir. 2022) (citation omitted) (cleaned up). Absent such deficiencies, this court looks at such Rule 56(d) motions with great favor and has urged that they should be liberally granted. *Am. Family Life Assurance Co. v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013) (per curiam).

Santee argues that the district court abused its discretion in denying his motion for a continuance of the submission date of Transocean's motion for summary judgment. He posits that he wished to depose Transocean's captain and Chevron's employees on the vessel at the time of his injury to

present evidence as to their authority over the crew and control of the vessel. He contends that his "targeted, specific requests . . . bore directly on Transocean's breach of its" *Scindia* duties. Santee again concludes that evidence of Transocean's daily meetings and general safety as to all maritime workers constitutes evidence of knowledge of the precise risks posed by the alleged improper cursor-pin changeout procedures. As we have said numerous times, "unsupported speculation [is] not sufficient to defeat a motion for summary judgment." *See Brown*, 337 F.3d at 541. Thus, Santee has not identified "specific facts" vital to his case that "would [have] affect[ed] the outcome of" the motion for summary judgment. *See Smith*, 827 F.3d at 423 (citing *Biles*, 714 F.3d at 895). Accordingly, the district court did not abuse its discretion in denying Santee's motion for a continuance.

## IV. Conclusion

The district court did not err in holding that Santee was not a Jones Act seaman and that he failed to establish a genuine dispute of material fact as to his negligence and unseaworthiness claims against Defendants. For the aforementioned reasons, we AFFIRM the district court's summary judgment in all respects.